UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER MOORE,

                Petitioner,                Case Number 2:11-CV-12786
                                                                 Honorable Arthur J. Tarnow

v.

WILLIAM SMITH,

                Respondent.
_____/

**OPINION AND ORDER DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

    Christopher Moore, ("Petitioner"), presently incarcerated at the Boyer Road Correctional Facility in Carson City, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition challenges his May 12, 2004, Wayne Circuit Court convictions for seven counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(a), seven counts of second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c(1)(a), two counts of disseminating sexually explicit materials to minors, MICH. COMP. LAWS § 722.675, and one count of third-degree home invasion. MICH. COMP. LAWS § 750.110a(4). Petitioner received concurrent terms of 168 months-to-50 years for each of his first-degree criminal sexual conduct convictions, 10-to-20 years for each of his second-degree criminal sexual conduct convictions, 1-to-2 years for each of the disseminating sexually explicit materials convictions, and 3-to-5 years for the home invasion conviction. The sentences to run concurrently.

    The petition raises the following three claims: (1) there was insufficient evidence to sustain Petitioner's criminal sexual conduct convictions; (2) the prosecutor obtained the

conviction through the use of perjured testimony; and (3) trial counsel was ineffective for failing to object to repeated acts of prosecutorial misconduct. The Court will deny the petition because these claims are without merit. The Court will also deny Petitioner a certificate of appealability.

I. Background

The charges against Petitioner involved allegations that he sexually molested his ten-year-old sister-in-law and his two young step-children.

At Petitioner's jury trial ID testified that she was the ten-year-old sister of Corina Moore, Petitioner's wife. About three years prior to trial, ID was at her sister's house with Petitioner. She was lying in bed watching television when Petitioner came into the bed, put his hands in her shorts through the leg holes, and touched her skin on her "middle part" where she goes "pee." He also rubbed her "butthole" where she goes "poop." Petitioner took his hand away when the phone rang. ID hid under the bed when Petitioner left to answer the phone. ID told her mother about the incident when she went home.

KW testified that she was Corina Moore's eleven-year-old daughter. She testified that when she was about six years old, Petitioner had her sit on his "middle part," and it felt hard. Another time, Petitioner took his fingers and rubbed on top of her "middle part" while she had clothes on. Petitioner talked about "salt" coming out of his middle part. Another time, KW saw Petitioner wiggle her brother's "thing." Petitioner also told her brother, "come lick on it," and she saw her brother lick Petitioner's penis.

KW described how on several occasions, Petitioner took two fingers and "spread" her vagina after he unbuttoned and unzipped her pants. She also saw his pants get wet

2

almost every time when he spread her vagina. Petitioner also rubbed oil on his penis, and asked KW to rub his penis with the oil on it, but she refused. KW told her mother, but she did not believe her.

KW's brother, YW, testified that he was nine years old at the time of trial. YW testified that Petitioner made him and his sister undress. Petitioner made YW put his mouth on Petitioner's penis. These things occurred in his mother's bedroom. YW saw Petitioner rub his own penis and saw white stuff come out, which Petitioner called "salt."

YW saw Petitioner put oil on his private parts as well as his sister's private parts. Petitioner also put the oil on his own private parts and then put YW on top of him while YW was naked. Petitioner then "[b]umped [YW] up and down." Petitioner also put oil on YW's penis and "wiggled"it. Petitioner once put the white stuff into YW's mouth. Petitioner told YW that he was doing these things "[t]o teach us . . . when we get married what to do." Petitioner told YW that he would get a spanking if he told.

Corina Moore testified that she was married to Petitioner. Petitioner used to watch her two children when she was working. In January of 2004, she was informed about a sexual assault on her little sister. As a result of this information, she questioned her two children. KW told her that Petitioner had touched her where he should not have. YW told her the same thing. Her two children then went to stay with their father, and Corina made a police report and obtained a personal protection order against Petitioner.

On January 31, 2004, Petitioner broke into her apartment, saying he was "sick of this." He pushed the door open and threw Corina's phone against a wall. She ran out to a neighbor's house and called the police. Petitioner followed her to the neighbor's place and

begged Corina to talk with him. When he walked back outside, the police caught him after a short chase.

Petitioner was advised of his constitutional rights and waived them. Petitioner admitted to an officer that he violated the PPO. When Sgt. Jeffrey Lazarski of the Romulus Police Department asked Petitioner about any sexual misconduct and the names of the three children, Petitioner denied doing anything. Petitioner then told the officer how his mother-in-law, Margaret Crump, had confronted him.

When Lazarski asked about KW, Petitioner stated she was very aware of her body, and had asked him questions about her body. He indicated that twice she came into the bedroom and pulled down her pants, and asked him where babies came from and about pubic hair. Petitioner also said YW would pull down his pants "while he [Petitioner] was helping him learn about sex," and that YW complained about having only one testicle. Petitioner felt YW's testicles to check and found two. Petitioner also admitted to using the word "salt" to describe sperm. He explained to YW how women became pregnant, and talked about a man's semen. However, Petitioner denied having put his penis in YW's mouth.

Later in his talk with Lazarski, Petitioner admitted that he was once naked and YW was curious and looked at his penis and even wanted to smell it. Petitioner also admitted to taking showers with YW. Petitioner stated it was possible that YW touched his penis or that his mouth went on it, but he wasn't aware of it, and he never told YW to do that. According to Petitioner, he wanted the children to know what semen was, so they might have seen him masturbating.

*Moore v Smith,* 11-CV-12786

In his written statement, Petitioner said he told the children about sexual organs to educate them, and that he never touched or fondled them. The statement further indicated that Petitioner denied any inappropriate touching. He indicated that KW would pull down her pants, and ask questions. Petitioner stated that he did check YW's testicles and talked with him about semen, or "salt." He said YW tried to smell his penis and could have touched it with his face, and that YW could have put his penis in his mouth without Petitioner knowing it happened. He stated the children caught him masturbating.

As for ID's claims, Petitioner stated that "[s]he was leaning on me, gave me another hug. I had my arm around her side, hand on her side and then went downstairs. I came back upstairs in about 30 minutes and could not find her."

After signing th written statement, Petitioner called his mother. He then asked the officer if he could rip up his statement, but the officer told him that he could not do so.

At trial, Petitioner testified that he never touched KW in a sexual manner, and had not spread her private parts with his fingers. He denied touching YW in a sexual manner, and had not forced oral sex on him. He also denied putting his hands in ID's clothing or touching her butt, but admitted being in a bedroom with her, watching television. He admitted giving a written statement to the police.

Based on this evidence Petitioner was convicted and sentenced as indicated above.

Petitioner filed an appeal in the Michigan Court of Appeals. His appellate counsel filed a brief that raised the following claims:

*Moore v Smith,* 11-CV-12786

> I. The prosecutor deprived Mr. Moore of his state and federal constitutional rights to a fair trial by using leading questions to elicit elements of the crimes and by arguing facts not in evidence. If trial counsel waived any of the error by failing to object to each and every instance of misconduct, he deprived Mr. Moore of his constitutional right to the effective assistance of counsel.
>
> II. The trial court erred in admitting Mrs. Moore's hearsay statement that YW had told her he and KW were abused by Mr. Moore.

Petitioner also filed a supplemental pro se brief that raised the following additional claims:

> I. Reversible error occurred when the defendant was denied a fundamentally fair trial by repeated and prejudicial prosecutorial misconduct.
>
> II. Defendant was denied the effective assistance of counsel where counsel failed to object to the repeated various acts of prosecutorial misconduct.

The Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *People v. Moore*, No. 256302 ( Mich. Ct. App. October 18, 2005). Petitioner subsequently filed an application for leave to appeal, which raised the claims raised in both briefs. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the court. *People v. Moore*, No. 130080 (Mich. Sup. Ct. April 28, 2006).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. Defendant cannot be convicted of disseminating sexually explicit material because the statute exempted him.
>
> II. Defendant was deprived of a fair trial because of inadmissible hearsay that other children were assaulted by him.
>
> III. Prosecutorial Misconduct.

IV. Defendant's sentence is in violation of *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 432 U.S. 220 (2005).

V. Defendant was denied effective assistance of counsel at trial and on appeal.

VI. Defendant should be accorded relief because justice had not been done.

The trial court denied the motion by opinion and order dated April 14, 2009. Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The application was denied "for failure to establish entitlement to relief under M.C.R. 6.508(D)." *People v. Moore*, No. 297519 (Mich. Ct. App. July 28, 2010). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under M.C.R. 6.508(D). *People v. Moore*, No. 141767 ( Mich. Sup. Ct. March 8, 2011).

Petitioner's habeas petition raises the following claims:

I. There was insufficient evidence presented at trial to sustain the convictions.

II. Petitioner's conviction was obtained by the use of perjured testimony.

III. Petitioner's trial counsel was ineffective for failing to object to repeated acts of prosecutorial misconduct.

## II. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

7

*Moore v Smith,* 11-CV-12786

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable [*10] determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.   , 131 S. Ct. 770, 789, 178 L. Ed. 2d 624 (2011), (*quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that

*Moore v Smith,* 11-CV-12786

habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

*Moore v Smith,* 11-CV-12786

### III. Discussion

A. Procedural Default

Respondent asserts that each of the Petitioner's claims is procedurally barred from review because of Petitioner's alleged various failures to properly present his claims to the state courts.

While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while a procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); see also, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walters v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Because it is more efficient to decide Petitioner's claims on the merits than to address the complicated issues raised by Respondent's procedural default defense, the Court will follow that course.

B. Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence presented at his trial to sustain his criminal sexual conduct convictions. As the Court understands his argument, Petitioner asserts that ID's father manipulated ID to falsely accuse him. He also seems to

10

*Moore v Smith,* 11-CV-12786

assert that his mother-in-law and wife developed some sort of psychological complex causing them to falsely accuse him.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (*quoting Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (*citing Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, (*citing Jackson*, 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

*Moore v Smith,* 11-CV-12786

Petitioner's argument boils down to the assertion that the testimony of the victims is insufficient because it was the product of ID's father's manipulations and was otherwise not credible. The question whether the jury should have disregarded the testimony of the witnesses, however, is beyond the scope of the federal court's authority on habeas review. *See Johnson*, 585 F.3d at 931-32 (habeas court may not reweigh the evidence adduced at trial, determine certain witnesses should not be deemed credible, or substitute the federal court's judgment for that of the trial court); *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence). The testimony of the victims, which the jury obviously chose to believe despite Petitioner's arguments, established the essential elements of the offenses for which Petitioner was convicted. Sufficient evidence was presented at trial to support Petitioner's criminal sexual conduct convictions. Petitioner is therefore not entitled to habeas relief on his first claim.

C. Perjured Testimony

Petitioner's second claim asserts that the prosecutor relied on the perjured testimony of the victims at trial.

A prosecutor's knowing use of perjured testimony to secure a conviction violates a defendant's right to due process. *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Miller v. Pate*, 386 U.S. 1, 7 (1967); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to establish a due process violation, the burden is on the criminal defendant to show that the statements were actually false, that they were material, and the prosecution knew that the

*Moore v Smith,* 11-CV-12786

testimony was actually perjured. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Mere inconsistencies in the testimony of the same witness do not establish the knowing use of perjured testimony by the prosecutor. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).

In the present case, Petitioner establishes, at most, some inconsistencies within the victims' testimony and some reasons a jury could have disbelieved them. These inconsistencies, and the credibility of the victims, were explored on cross-examination by Petitioner's counsel, and the jury chose to credit the testimony of the victims over that of Petitioner. The admission of the victims' testimony did not violate Petitioner's due process rights.

D.  Prosecutorial Misconduct

Finally, Petitioner asserts that the prosecutor committed misconduct by misrepresenting the evidence presented and vouching for the credibility of KW, and that his counsel was ineffective for failing to object.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168,

*Moore v Smith,* 11-CV-12786

181(1986) (citing *Donnelly*); *Parker v. Matthews*, U.S. , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

On direct examination, the prosecutor questioned KW about what she described as Petitioner "spreading" her vagina. KW testified, "he would go and like open it like that (indicating). He would open my vagina." Id., at 134. The prosecutor also asked clarifying questions seeking yes/no answers, such as: "So was he touching your skin?" "You said he put his two fingers like in and spread your vagina?" "Did you tell Chris that it hurt when he spread your vagina?"

During closing argument, the prosecutor sought to establish the element of sexual penetration with respect to KW by stating: "[KW] didn't say that he stretched the skin like this (indicating). She said – she demonstrated with her hands. Some part of his finger had to penetrate however slight – that's what the judge is going to tell you – however slight he had to penetrate that little girl. And I think she was very very very graphic, and she was very clear and very concise about how that would be." Tr II, at 180.

Petitioner asserts that this line of argument was an unfair characterization of KW's testimony and amounted to vouching for her credibility. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell,* 181 F.3d 731, 737 (6th Cir. 1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon

14

*Moore v Smith,* 11-CV-12786

the record evidence. *Id.* "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted).

There was nothing improper about the complained-of line of questioning or argument. The child witness was properly asked to describe what she alleged Petitioner had done to her. She apparently described what she meant by "spreading" with words and gestures. The prosecutor then properly commented on this testimony during closing argument to suggest that the description entailed sexual penetration. The comment was a fair argument to make based on the evidence presented at trial and in no way constituted improper vouching. Petitioner's counsel was also therefore not ineffective for failing to make a meritless objection. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006).

Petitioner's third claim is without merit.

IV. Conclusion

Based on the foregoing analysis, the Court concludes that Petitioner's claims are without merit and he has failed to demonstrate entitlement to habeas relief. Accordingly, the Court **DISMISSES** the petition for writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional

*Moore v Smith,* 11-CV-12786

right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

After conducting the required inquiry and for the reasons stated herein, the Court is satisfied that jurists of reason would not find the Court's decision debatable. No certificate of appealability is warranted in this case. Accordingly, the Court **DENIES** a certificate of appealability.

**IT IS SO ORDERED**.

                                        S/Arthur J. Tarnow  
                                        Arthur J. Tarnow  
Dated: March 28, 2013        Senior United States District Judge

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 28, 2013, by electronic and/or ordinary mail.

                                        S/Catherine A. Pickles  
                                        Judicial Assistant